**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ETHAN DANIEL MARKS,

Plaintiff,

v.

BENJAMIN M. BAUER *acting in his individual capacity as a Minneapolis Police Officer*,

Defendant.

Case No. 20-CV-1913 (ADM/JFD)

**ORDER ON PLAINTIFF'S MOTION TO AMEND (DKT. NO. 59)**

---

This matter is before the Court on Plaintiff's first Motion to Amend the Pretrial Scheduling Order (Dkt. No. 59). This Court held a motion hearing on December 20, 2021. Robert Bennett and Kathryn Bennet appeared for the Plaintiff, and Kristin Sarff for the Defendant. For the reasons set forth below, Plaintiff's Motion is granted in part and denied in part.

## I. FINDINGS OF FACT AND PROCEDURAL HISTORY

On September 8, 2020, Plaintiff Ethan Daniel Marks filed this lawsuit under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendment by a Minneapolis Police Department ("MPD") Officer who was, at the time the original complaint was written, unidentified. (Dkt. No. 1.) On July 19, 2021, after Defendant Benjamin M. Bauer was identified, Plaintiff amended his complaint a second time to name Bauer specifically. (Second Am. Compl. ("Complaint"), Dkt. No. 50.) In this operative pleading, Plaintiff alleges that on May 28, 2020, three days after the killing of George

Floyd, Bauer fired a 40-millimeter "less lethal" round into Marks's face at point-blank range, causing severe and permanent injuries, including, probably, the total loss of one eye. (*Id.* ¶¶ 1, 6, 114.)

According to the allegations of the Complaint, Plaintiff and his mother, a registered nurse, were participating in a community clean-up in the Longfellow neighborhood of Minneapolis when, at approximately 5:30 p.m., numerous Minneapolis Police units arrived. *(Id.* ¶¶ 21, 26, 30–33.) The Complaint is not specific about what, exactly, happened next, but one member of the public began having medical issues. (*Id.* ¶¶ 35–36.) Plaintiff's mother identified herself as a nurse and attempted to render aid to the person having the apparent medical issue, but was physically prevented from doing so, and pushed back, by an MPD officer. (*Id.* ¶¶ 43–44, 46, 48.) Plaintiff confronted the officer who had pushed his mother (who was not Bauer), shouted "Back up, Bitch!" and attempted to wrest away the officer's baton. (*Id.* ¶¶ 54–55.) The officer was able to retain control of the baton, and to push Plaintiff back. (*Id.* ¶ 55.) At this point, alleges the Complaint, Defendant Bauer fired a 40-millimeter round loaded with pepper spray into Plaintiff's face at point-blank range, deflating one eyeball and breaking several facial bones. (*Id.* ¶¶ 57–59, 62, 67, 70, 85, 90, 92, 110.)

This case has been in discovery since April 16, 2021, when Magistrate Judge Elizabeth Cowan Wright issued the Pretrial Scheduling Order (Dkt. No. 40). That Order set the following deadlines: fact discovery to be concluded by January 3, 2022; expert discovery to be concluded by June 30, 2022; non-dispositive motions to be filed and served

on or before January 17, 2022; dispositive motions to be filed and served on or before August 31, 2022; and the case to be trial-ready on October 29, 2022. (*Id.*)

Plaintiff now moves, pursuant to Fed. R. Civ. P. 16(b) and Local Rule 16.3, to amend the Pretrial Scheduling Order by adding 90 days to all deadlines. (Pl.'s Mot. at 1; Pl.'s Mem. Supp. at 1, Dkt. No. 61.) Plaintiff asserts this is necessary because Defendant has caused unnecessary delay in scheduling depositions. (Pl.'s Mem. Supp. at 15–16.) Defendant opposes the extension, arguing that Plaintiff has not been diligent in prosecuting this case. (Def.'s Mem. Opp'n at 1–2, Dkt. No. 71.) Defendant also opposes the extension on the grounds that many plaintiffs in civil rights cases involving the MPD are moving for extensions, and that this could lead to several cases proceeding to trial close together, which would make it difficult for Defendant to prepare for and staff those trials. (*Id.* at 22–23.)

## II. GOVERNING LAW

Federal Rule of Civil Procedure 16(b)(4) provides that a case's "schedule may be modified only for good cause with the judge's consent." Under this District's Local Rule 16.3(b), "[a] party that moves to modify a scheduling order must: (1) establish good cause for the proposed modification; and (2) explain the proposed modification's effect on any deadlines." This explanation should include "what discovery remains to be completed;" what discovery "has been completed;" the reasons "why not all discovery has been completed; and . . . how long it will take to complete discovery." D. Minn. L. R. 16.3(c).

"A modification to a scheduling order is proper only when the movant has demonstrated good cause." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006), *overruled on other grounds in Avichail ex rel. T.A. v. St. John's Mercy Health Sys.*, 686 F.3d 548,

552 (8th Cir. 2012) (citing Fed. R. Civ. P. 16(b)). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (citations omitted). Courts have the discretion to "den[y] a motion to amend which [makes] no attempt to show good cause." *Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (*quoting Freeman v. Busch,* 349 F.3d 582, 589 (8th Cir. 2003). No clear test exists to measure when a party's diligence establishes good cause, giving courts broad discretion to determine this issue. *Portz v. St. Cloud State Univ.,* No. CV 16-1115 (JRT/LIB), 2017 WL 3332220, at *4 (D. Minn. Aug. 4, 2017).

While "Eighth Circuit caselaw reflects the importance of diligence to the good cause analysis, . . . this caselaw does not . . . state that diligence is required for [a court] to find good cause." *Id.* at *3. In addition to diligence, other factors courts may consider include, but are not limited to: whether—and to what extent—the opposing party would be prejudiced by a modification; what explanation the movant offers to justify the amendment; the importance of the amendment; whether, even with reasonable diligence, parties still could not meet the deadlines; and whether the modification is necessitated by the opposing party's actions. *Id.* at *4; *see also* Wright & Miller, *§ 1522.2 Modifying Scheduling Orders*, 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.).

## III. DISCUSSION

This extension motion is before the Court in large part because counsel are not meeting and conferring as required by the Local Rules. *See* D. Minn. L. R. 7.1. The motion papers demonstrate this; both the Plaintiff's Memorandum in support of the motion and the

Defendant's Memorandum in opposition to it open with pages and pages of claims about bad behavior on the part of the other side, allegations which have little or nothing to do with the instant extension motion. Both parties have appended numerous emails to their motion papers, the tone and content of which lack the cooperative professionalism necessary to efficiently resolve disputes during discovery. For example, in Plaintiff's Exhibit E, Defendant's counsel states,

> I am attaching and producing a one-page document from the St. Paul City Attorney's Office. I trust that the supplemental production totaling three additional pages will not overwhelm the plaintiff's four-person legal team before the deposition. It appears your review of the first two pages took no more than eight minutes.

(Pl.'s Ex. E at 15, Dkt. No. 62-1.) As another example, in Plaintiff's Exhibit S, Plaintiff's counsel states,

> Given the very short schedule you asked for and received, these depositions, that will require only two full days, need to be taken in November. Clear part of your schedule, get others in your office to cover them or propose an amended schedule that we can both agree to next week.

(Pl.'s Ex. S at 7, Dkt. No. 62-2.)

This Court's Practice Pointers stress the importance of the meet-and-confer process that must, pursuant to Local Rule 7.1, precede the filing of a motion. "The meet-and-confer requirement of the Local Rules is intended to lead to a meaningful, pre-motion-filing exchange of views between the parties to a lawsuit, and, if possible, to a full or partial resolution of the matter(s) that are the subject of a contemplated motion." *Magistrate Judge John F. Docherty's Practice Pointers and Preferences,* https://www.mnd.uscourts.gov/

judges-practice-pointers, at 3 (last visited Dec. 20, 2021). In addition, the Practice Pointers make clear that letter-writing and emailing campaigns satisfy neither the letter nor the spirit of the meet-and-confer requirement. *Id.*

To be clear, the meet-and-confer requirement is just that: a requirement that counsel meet and confer in an effort to resolve, or at least minimize, their differences. Exchanges of insulting emails all but ensure that, rather than resolving differences, the meet-and-confer process will breed further acrimonious disagreement.

The Court is further concerned with the difficulty it faced in the basic task of establishing a timeline of relevant events in this case. The Court began the December 20 hearing by describing its preliminary view of the facts based upon the motion papers. During that description, the Court stated its understanding that Defendant Bauer had not been identified until July 2021, and that Plaintiff had moved to amend his Complaint after that identification, and still within the month of July. Following this amendment, Plaintiff received Defendant Bauer's Answer in August; immediately served initial discovery requests that same month; received Defendant's discovery responses in September; and based on those responses, promptly initiated scheduling the first depositions within a few weeks of receiving them. This shows some diligence; however, Plaintiff did not correct the Court's mistake about the timing of Defendant Bauer's identification, even though Plaintiff's counsel presented his position first at the hearing. It was only when Defendant spoke—pointing out that Defendant Bauer had been identified on May 20, 2021—that the Court's understanding of this important point, directly related to Plaintiff's diligence, was corrected. (*See* Pl.'s Ex. I at 4, Dkt. No. 62-1, dated May 20, 2021 ("Defendants provide

that Plaintiff was struck with a less-lethal projectile by Officer Benjamin Bauer, badge number 0340."). Even after the Court was made aware of this fact, Plaintiff's counsel did not immediately correct the record, but instead gave a discursive account of how knowing the identity of the shooter was insufficient, because that knowledge led to the need for an amended complaint, which took time to draft. The Court agrees that amending pleadings takes time. Yet it remains troubling that only when really pressed by this Court did Plaintiff's counsel finally agree that Defendant Bauer had been identified to Plaintiff on May 20, 2021.

As to relevant factors in addition to Plaintiff's diligence, Defendant claims he will be prejudiced by a continuance, but the type of prejudice Defendant claims is not recognized by the law. First, Defendant notes that several plaintiffs in excessive force cases involving the MPD are currently seeking extensions. This is true. But there is nothing sinister in plaintiffs' need to seek extensions in some cases because of the difficulty of identifying individual police officers who took particular, complained-of actions. In any event, prejudice, to be the kind of prejudice that entitles a party to relief, must be prejudice originating within the case at bar, not prejudice arising from another case. *United States v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2019 WL 1915795, at *2 (D. Minn. Apr. 30, 2019) (citation omitted) (finding extra-litigation impacts are "afield of the concerns of prejudice generally found in the caselaw").

This is a serious case, there is some evidence that Plaintiff has been diligent, and the Court ascribes the scheduling difficulties in this case equally to the behavior of both sides. That said, Plaintiff seeks an extension to take depositions. When asked by the Court at the

hearing, Plaintiff foreswore any need to take additional written discovery, though Plaintiff seemed to leave open the possibility of taking additional depositions. Plaintiff has used up four of his allotted 15 depositions under the Pretrial Scheduling Order. Even if Plaintiff takes all 11 depositions he has left, these depositions should not take 90 days to complete. Therefore, the Court will extend the deadlines in this case by 45 days and does not contemplate granting any further extensions.

Two further points. First, these depositions need to be scheduled and both counsel need to cooperate in accomplishing this. That means that Plaintiff cannot, when asked by Defendant who he is going to depose, decline to answer, on the grounds that the identity of deponents is a matter of "trial strategy."[1] It is impossible to schedule a deposition for a deponent whose identity Plaintiff's counsel will not reveal, and if counsel will not identify the deponents, that same counsel cannot subsequently complain of a lack of cooperation in deposition scheduling. Second, both Plaintiff and Defendant must make efforts to show scheduling flexibility and be available for depositions so that they can be timely completed.

---

[1] At the December 20 hearing, Plaintiff's counsel claimed that he was not aware of any such statement having been made. Again, however, there is a record, and again, it contradicts Plaintiff's counsel. (*See* Pl.'s Ex. DD at 59, Dkt. No. 62-2 (containing an email exchange between Plaintiff's attorney Betinsky and Assistant City Attorney Sarff (Question by Ms. Sarff: "Could you please tell me who else you plan to depose?" Response by Mr. Betinsky: "There is a long list of people, and precisely which ones we will depose is both a matter of our trial strategy and may hinge on other testimony in the case.")))

The amended Pretrial Scheduling Order deadlines are as follows:

| **DEADLINE TYPE** | **PREVIOUS DEADLINES** *(per Dkt. No. 40)* | **REVISED DEADLINES** *(per this Order)* |
|---|---|---|
| Fact discovery | 1/3/2022 | 2/17/2022 |
| Expert discovery | 6/30/2022 | 6/30/2022 |
| Non-dispositive motions | 1/17/2022 | 3/3/2022 |
| Dispositive motions | 8/31/2022 | 8/31/2022 |
| Trial ready | 10/29/2022 | 10/29/2022 |

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend the Pretrial Scheduling Order (Dkt. No. 59) is **GRANTED** in part and **DENIED** in part, as set forth above**.**

Dated: December 21, 2021

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge